UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER H.,<br><br>                Plaintiff,<br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                Defendant. | CASE NO. 2:25-cv-00622-GJL<br><br>SOCIAL SECURITY DISABILITY APPEAL ORDER |

This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule 13. *See also* Consent to Proceed Before a United States Magistrate Judge, Dkt. 2. This matter has been fully briefed. *See* Dkts. 10, 12, 13.

After considering the administrative record (AR) and all memoranda, the Court concludes the Administrative Law Judge (ALJ) did not err in finding Plaintiff not disabled. The Court accordingly **AFFIRMS** the Commissioner's final decision in this matter.

                      **I.**      **PROCEDURAL HISTORY**

Plaintiff's application for Disability Insurance Benefits (DIB) was denied initially and following reconsideration. AR 69–97. Plaintiff's requested hearing was held before the ALJ on

SOCIAL SECURITY DISABILITY APPEAL ORDER - 1

1   March 12, 2024. AR 37–68. On April 17, 2024, the ALJ issued a written decision concluding

2   Plaintiff was not disabled. AR 14–36. On February 11, 2025, the Appeals Council declined

3   Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision

4   subject to judicial review. AR 1–6. On April 10, 2025, Plaintiff filed a Complaint in this Court

5   seeking judicial review of the ALJ's decision. Dkt. 4. Defendant filed the sealed AR in this

6   matter on June 9, 2025. Dkt. 7.

## II.   BACKGROUND

Plaintiff was born in 1971 and was 49 years old on June 25, 2021, her alleged date of disability onset. *See* AR 17, 69. According to the ALJ, Plaintiff suffers from, at a minimum, the severe impairments of osteoarthritis, fibromyalgia, inflammatory arthritis, and spinal disorders. AR 19. However, the ALJ found Plaintiff was not disabled because she had the Residual Functional Capacity (RFC) to perform light work with some additional postural and manipulative limitations. *See* AR 22, 30. Based on the RFC, the ALJ found Plaintiff could perform her past relevant work (at step four of the sequential evaluation process) and could perform work existing in significant numbers in the national economy (at step five). AR 30–31.

## III.   DISCUSSION

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of benefits if, and only if, the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)). Substantial evidence "is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "It means—and means only—such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotations omitted).

In her opening brief, Plaintiff contends the ALJ erred in finding her depression and anxiety non-severe impairments at step two of the sequential evaluation process. *See* Dkt. 9. At step two, the ALJ determines whether a claimant has produced evidence of one or more medically determinable impairments (MDIs) and whether those impairments are severe. *See* 20 C.F.R. § 404.1520(a)(4)(ii). The ALJ found Plaintiff's depression and anxiety were MDIs but found they were non-severe. *See* AR 20.

A combination of impairments is non-severe "if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). In considering whether a claimant has severe mental impairments, ALJs rate a claimant's functional limitations in four areas on a five-point scale: none, mild, moderate, marked, severe. *See* 20 C.F.R. § 404.1520a(c)(3)–(4). A claimant's mental impairments are generally non-severe if the ALJ rates their functioning in all four areas as "none" or "mild." *Id.* § 404.1520a(d)(1). Such ratings are appropriate if the claimant has no more than a slight limitation in those areas. *See* 20 C.F.R. Subp. P, App. 1 ("Listings") § 12.00(F)(2)(a)–(b).

The ALJ rated Plaintiff's functioning in the four relevant areas as being "none" or "mild." AR 20–21. Plaintiff challenges the ALJ's findings that she had mild limitations in two of these areas: (1) maintaining concentration, persistence, and pace (CPP); and (2) adapting or managing oneself. *See* Dkt. 10 at 7–10.

Maintaining CPP "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." Listings 12.00(E)(3). The ALJ found Plaintiff had a mild CPP limitation for the following reasons:

> A State agency psychological consultant [Dr. Gary N.] reported that the claimant was mildly [limited] in this area, which is persuasive when considered with the other evidence [AR 85–97]. The claimant indicated being limited in concentration and completing tasks in her function report [AR 293]. In the May 2023 psychological examination, she made errors with serial sevens but was able to recite the months of the year in reverse order and spell "world" backwards, which suggests she has fair concentration [AR 1271]. The examining psychologist [Dr. Higgins] also did not indicate a significant limitation in this area [AR 1272].

AR 21. That Plaintiff was able to perform most concentrated-related tests on examination—only erring in performing serial 7s, which entail counting backward from 100 by 7, and making only two errors therein (*see* AR 1271)—is substantial evidence to find Plaintiff had no more than a slight limitation in her ability to complete tasks and concentrate. Combined with Dr. N.'s opinion that Plaintiff would have only a mild limitation in this area, substantial evidence supports the ALJ's determination.

Adapting or managing oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." Listings 12.00(E)(4). The ALJ found Plaintiff had a mild limitation in that area for the following reasons:

> A State agency psychological consultant [Dr. N.] reported that the claimant was mildly [impaired] in this area, which is persuasive when considered with the other evidence [AR 85–97]. In her function report, the claimant indicated that she has difficulty handling stress and more than minimal changes in routine [AR 294]. The examining psychologist [Dr. Higgins] did not indicate significant limitations in this area [AR 1273]. She was prescribed medications for anxiety and depression by a primary care provider, which is a routine course of mental health treatment [*see e.g.* AR 1286–1349]. The claimant mostly reported issues with situational stress related to her limited financial resources and her physical health when seeing a social worker in 2023 (20F/5-42) [AR 1444–81]. However, she reported improved depression after medication changes in late 2023 [AR 1329, 1440]. She did not report mental difficulties with attending to personal care and engaging in other activities of daily living [*see* AR 289].

AR 21. This, too, was a proper basis for the ALJ's finding. That Plaintiff's stress-related symptoms were unrelated to her mental impairments renders those symptoms irrelevant to the

SOCIAL SECURITY DISABILITY APPEAL ORDER - 4

disability determination. *See* 20 C.F.R. §§ 404.1522(a) (step two considers how impairment "limit[s]" abilities); 404.1505(a) (disability is an inability to perform work due to MDIs).

      Further, the ALJ found Plaintiff's pain complaints stemming from her physical health insufficiently credible (*see* AR 23–26) and Plaintiff has not challenged this finding. Conversely, the ALJ could properly conclude Plaintiff's stress caused by such complaints were also non-severe. Finally, the ALJ could reasonably conclude a conservative course of treatment was incongruous with a significant difficulty handling stress and adapting to changes. Coupled with medical opinions opining her difficulties with stress and adaptation were not significant, this is substantial evidence to support the ALJ's finding.

      In making his findings, the ALJ principally relied upon the opinion of non-examining source Dr. N. Even under the old regulations governing the evaluation of medical opinions, where examining and treating physicians were presumptively given great weight, *see* 20 C.F.R. § 404.1527, Dr. N's opinion would be substantial evidence supporting the ALJ's determination. "[R]eports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)

      Plaintiff notes in her Opening Brief that Dr. N did not have access to some of the relevant mental health-related treatment notes (Dkt. 10 at 6–7) and contends in her Reply Brief that, as a result, the ALJ could not find the opinion persuasive (Dkt. 13 at 3). However, the ALJ need not discount a medical opinion simply because the source did not have access to all of the records. *See* 20 C.F.R. § 404.1520c(b)(2), 404.1520c(c)(5) (the extent to which a medical source is familiar with the evidence is a valid consideration but not one of "most important factors" they must articulate in their analysis thereof); *see also Elsey v. Saul*, 782 Fed. App'x 636, 637 (9th

Cir. 2019) (unpublished) ("The [pre-2017] regulations require that an ALJ evaluate the degree to which a non-examining source considers the evidence, not that a failure to consider all evidence requires the source to be discounted.").

Plaintiff claims error by pointing to evidence in the record suggesting she had further limitations in these areas. *See* Dkts. 10, 13. As an initial matter, Plaintiff's arguments suffer from two common defects. First, although the Court must consider the record as a whole, *see Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014), "the ALJ is responsible for . . . resolving conflicts in medical testimony, and for resolving ambiguities," *Tommasetti v. Astrue*, 533 F.3d 1035, 1041–42 (9th Cir. 2008). Thus, that some evidence in the record detracts from the ALJ's step two finding is not, by itself, a proper basis for reversal.

Second, showing that some evidence suggests Plaintiff had further mental limitations does not necessarily show reversable error. A step two error is harmless if the omitted impairments do not warrant a different outcome later in the sequential evaluation process. *Burch v. Barnhart*, 400 F.3d 676, 682–83. "The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

All three positions identified at step five require a Specific Vocational Preparation level of 2 (*see* AR 31), which means the positions require one month or less of training (*see* Dictionary of Occupational Titles (DOT) App'x C). The ALJ found Plaintiff could perform the position of housekeeper, DOT 323.687-014, which had over 200,000 jobs available nationally (*see* AR 31), an amount sufficient to sustain the ALJ's step five conclusion, *see Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014). That position has a reasoning level of 1, requiring only that a claimant "apply commonsense understanding to carry out simple one- or two-step

instructions" and "deal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App'x C. Plaintiff does not contend a different outcome at step three is warranted (*see* Dkt. 10 at 9) and a finding of "not disabled" at step five is sufficient to sustain the ALJ's decision (*see* 20 C.F.R. § 404.1520(a)(4)).

Thus, Plaintiff cannot show reversible error at step two unless the purportedly mis-assessed evidence shows she could not engage in work requiring one month or less of training or that she could not engage in tasks requiring simple one- to two-step instructions with standardized situations and occasional or no variables.

Turning to Plaintiff's specific arguments, Plaintiff argues the ALJ erred at step two because (1) he misinterpreted Dr. Higgins' evaluation, (2) he did not properly consider her testimony and her husband's statement, and (3) some of the medical records undermine the ALJ's findings. *See* Dkts. 10, 13.[1]

**A.    Dr. Higgins' opinion.**

Dr. Higgins opined, in relevant part, as follows:

> [Plaintiff] demonstrated mildly impaired short-term recall. She would be able to remember and carry out short and simple instructions. She could probably follow slightly longer instructions if they are written down. She would not require additional supervision and can be expected to complete tasks independently. I would not expect her psychological symptoms to interfere with her attendance at work.
>
> There is no indication that a minimal increase in mental demands, such as those associated with entry level employment, would lead to psychological decompensation.

---

[1] In assessing the medical evidence, the ALJ also found unpersuasive the medical opinions of Plaintiff's treating sources Kristen Wyrick, MD, and Diane McRae, LICSW (*see* AR 28–29), and Plaintiff has not challenged the ALJ's determinations that these opinions were unpersuasive (*see* Dkt. 10).

SOCIAL SECURITY DISABILITY APPEAL ORDER - 7

AR 1272–73. At step two, the ALJ wrote that Dr. Higgins "did not indicate significant limitations" in maintaining CPP or adjusting or managing oneself. AR 21. Elsewhere he wrote Dr. Higgins "did not comment on the claimant's ability to understand, remember, and carry out detailed or complex tasks . . . and respond appropriately to work-related changes." AR 29. Plaintiff, on the other hand, argues Dr. Higgins' silence on those matters should be construed as opining further limitations: Dr. Higgins' statement that she could follow instructions "slightly longer" than "short and simple," Plaintiff argues, implies Plaintiff could not follow longer ones. Dkt. 9 at 8. Dr. Higgins' statement that she would not have psychological decompensation from a "minimal increase in mental demands," to Plaintiff, implies she would have decompensation from a larger increase. Dkt. 9 at 9.

"Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ's interpretation reflected a rational interpretation of the opinion. Dr. Higgins did not write that Plaintiff had the limitations Plaintiff urges, although she was writing in a section describing "workplace limitations/conditions." AR 1272. The remainder of her opinion does not evince an intent to opine further limitations: she wrote that "from a strictly psychological standpoint, [Plaintiff's] prognosis for employment is promising," and that she did not "believe [Plaintiff's] symptoms of anxiety and depression are a primary barrier to working, though they may exacerbate her subjective experience of pain." *Id.*

Even so, Plaintiff's suggested interpretation does not show reversible error. Dr. Higgins' statement explicitly stated Plaintiff could handle the mental demands of entry-level employment and instructions longer than short-and-simple ones. AR 1272–73. This is consistent with work

SOCIAL SECURITY DISABILITY APPEAL ORDER - 8

which requires less than 30 days to perform and requires only simple, one- to two-step instructions, so the purported need for further limitations would not show reversable error.

**B.    Plaintiff and Plaintiff's Husband's statements.**

Plaintiff argues the ALJ erred in considering some of her subjective allegations regarding her mental impairments, along with the allegations of her husband. Dkt. 10 at 10; Dkt. 13 at 4–5.

As the ALJ acknowledged, Plaintiff wrote in a function report that she "do[es] not handle stress well" and "can adapt to minimal changes" in routine. AR 294.[2] She also wrote (as the ALJ acknowledged) that she had difficulty concentrating, "depend[ing] on her pain or [the] task," and difficulty completing tasks, "depend[ing] on [the] duty." AR 21, 293. The statement of Plaintiff's husband described similar symptoms: he indicated Plaintiff had difficulty completing tasks and concentrating, could not handle stress, and had difficulty adjusting to changes in routine. AR 285–86.[3]

The statements do not show reversable error. That Plaintiff can adapt to minimal changes is consistent with Level 1 Reasoning, as that reasoning level requires few situational variables. That Plaintiff's ability to concentrate "depends on [her] pain or [the] task" and her ability to

---

[2] Plaintiff argues the ALJ erred by "fail[ing] to acknowledge that Plaintiff . . . reported difficulties handling stress and handling changes in routine." Dkt. 10 at 10. But the ALJ did acknowledge this allegation in finding Plaintiff had a mild limitation in adapting or managing oneself. AR 21 ("In her function report, the claimant indicated that she has difficulty handling stress and more than minimal changes in routine[.]").

[3] Plaintiff also notes in her Reply Brief that she purportedly alleged difficulties with memory on her function report and contends the ALJ erred in stating to the contrary. Dkt. 13 at 4. The function report is ambiguous as to whether she would have difficulties with memory. Plaintiff did not check a box on a list of symptoms indicating she had such difficulties. AR 293. But she did write, in response to a question asking how well she follows spoken instructions, that it "depends on how many tasks" because she will "forget [one] or more if not written down." *Id.* The Court defers to the ALJ's resolution of such ambiguities. *See Morgan*, 169 F.3d at 599. Even so, Plaintiff's allegation, at most, shows she cannot remember instructions for several tasks. But as discussed, the ALJ's step five finding can be affirmed so long as Plaintiff can perform one- to two-step tasks with occasional or no variables, which is not inconsistent with this statement.

complete tasks "depends on [the] duty" (AR 293) suggests she can sometimes concentrate on and complete some tasks, which would satisfy the minimum threshold for Level 1 Reasoning.

To the extent Plaintiff and her husband alleged she was further limited than required by Level 1 Reasoning, the remainder of the ALJ's findings in discussing Plaintiff's testimony provide a proper basis for rejecting that testimony. Namely, the ALJ found Plaintiff's course of treatment was conservative, and noted that much of her difficulties handling stress were due to issues unrelated to her mental impairments. *See* AR 21; *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."); 20 C.F.R. § 404.1522(a) (severity only considers effect of impairment); *see also Molina*, 674 F.3d at 1116–22 (failing to consider lay witness statement harmless error if cumulative of properly-discounted subjective testimony and reasoning for rejecting subjective testimony applies).

Moreover, "looking to *all* the pages of the ALJ's decision," *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022) (emphasis in original), the ALJ also gave reasons for finding Plaintiff's allegations insufficiently credible in evaluating her physical impairments. There was evidence of pain exaggeration at examinations, she made inconsistent statements to providers about her reasoning for declining medication, and she was noticed changing her gait after appointments. *See* AR 23–25. The ALJ could properly find Plaintiff's subjective allegations unpersuasive for such reasons. *See e.g.*, *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (finding "specific, clear, and convincing reasons" standard met by identifying inconsistent statements and inferring they "carried over" to credibility of other allegations).

**C.    Medical Evidence.**

Plaintiff also describes some of the medical evidence and contends it undermines the ALJ's step two conclusion. *See* Dkt. 10 at 10; Dkt. 13 at 5–6. Specifically, she points to notes observing tearfulness at appointments and indicating she catastrophized physical pain. *See* Dkt. 10 at 6–7, 10; Dkt. 13 at 5–6.

Such evidence does not undermine the ALJ's conclusions and assessment of the medical evidence. That Plaintiff was tearful at appointments related to her medical issues does not necessarily mean Plaintiff would have related difficulties prohibiting the performance of basic work activities. Indeed, Plaintiff was tearful on examination with Dr. Higgins (AR 1271) and Dr. N reviewed medical evidence showing abnormal mood and tearfulness (*see* AR 88–89). The ALJ properly relied upon the medical opinions of both sources, who did not find such observations compelled further limitations. Similarly, that Plaintiff catastrophized her physical pain does not implicate her handling of basic work activities.

In sum, the ALJ gave proper reasons supported by substantial evidence for finding Plaintiff's mental impairments non-severe at step two. The ALJ properly assessed the medical evidence and the medical opinions of the record and these sources provided substantial evidence on which to support his step two finding. Plaintiff has not successfully argued the ALJ misevaluated the evidence of the record at step two, and the evidence which might suggest a contrary conclusion does not significantly undermine the ALJ's decision.

Accordingly, the ALJ reasonably weighed and interpreted the medical evidence and the ALJ's decision is affirmed.

//

## IV. CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 18th day of September, 2025.

Grady J. Leupold
United States Magistrate Judge